```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                       NORTHERN DIVISION
```

```
TRICIA PEOPLES,                    :
                                   :
     Plaintiff,                    :
                                   :
vs.                                :
                                   :  CIVIL ACTION 12-0392-M
MICHAEL J. ASTRUE,                 :
Commission of Social Security,     :
                                   :
     Defendant.                    :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13-14).[1]  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20).  Oral argument was waived in this action (Doc. 19).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for

---

[1] Plaintiff originally filed for disability insurance benefits under 42 U.S.C. § 405(g), but amended her disability onset date and withdrew her claims for these benefits at the evidentiary hearing (*see* Doc. 14, p. 1; *cf.* Doc. 15, p. 1 n.1).

further administrative proceedings not inconsistent with the Orders of this Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-eight years old, had completed a high school education (Tr. 27), and had previous work experience as a fast food cook, cashier, and sewing machine operator (Tr. 27-29). In claiming benefits, Plaintiff alleges disability due to diabetes, hypertension, and cognitive loss (Doc. 13).

The Plaintiff filed an application for SSI on October 22, 2008 (Tr. 143-45; *see also* Tr. 9). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Peoples could not return to her past relevant work, there were unskilled, light work jobs in the

national economy which she could perform (Tr. 9-22).  Plaintiff requested review of the hearing decision (Tr. 140-41) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Peoples alleges that:  (1) The ALJ erred in rejecting the opinion of the only examining neuropsychologist; (2) the ALJ erred in evaluating her noncompliance; (3) the ALJ's decision is internally inconsistent; and (4) the ALJ improperly credited the opinion of the vocational expert (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant[2] evidence of record follows.

Dr. Toheed J. Kamal examined Peoples on February 15, 2008 and noted that she had "type 2 diabetes, hypertension, dyslipidemia, retinopathy, and micro albuminuria.  She has done self-monitoring twice daily and the control has been suboptimal" (Tr. 293; *see generally* Tr. 292-304).  Though Plaintiff had gained about eight pounds in the previous six weeks, her exam was normal; Kamal instructed her to limit herself to three-to-four carbohydrates per meal.  On November 18, the doctor noted that Peoples was "under stress and has often skipped her

---

[2]As referenced in note one, Peoples amended her onset date to October 22, 2008 at the evidentiary hearing (*see* Tr. 9), so the Court finds it unnecessary to review the medical evidence that precedes that date by a long period of time.

3

insulin, partly related to the cost" (Tr. 292).  Kamal noted a fifteen-pound weight loss since the previous examination, but indicated that she had missed her anti-hypertensive medications; dietary habits were characterized as poor.  The doctor indicated that her diabetes was in "poor control with poor compliance" (*id.*).

On November 18, 2008, Peoples was seen at Sputh Center for Sight where she was diagnosed to have non-proliferative diabetic retinopathy, hypertension eye disease, and a cataract, caused by diabetes and hypertension (Tr. 305-07).  Her prognosis was good so long as her blood pressure and diabetes were controlled.

On May 8, 2009, Dr. Huey R. Kidd examined Plaintiff for photophobia and a headache; he noted that her extra-ocular movements were intact (Tr. 330-31; *see generally* 322-63).  The diagnosis was essential hypertension, poorly controlled diabetes mellitus, and a migraine headache.  On May 22, the doctor examined Peoples for blurry vision for which a yearly eye exam was recommended (Tr. 326-29).  On June 5, 2009, Dr. Kidd continued his diagnosis of essential hypertension and poorly controlled diabetes mellitus; he recommended a low sodium, weight loss diet and regular exercise (Tr. 322-25).  Two weeks later, the doctor noted that Peoples was not exercising regularly (Tr. 356); this was noted again on June 30 (Tr. 352).  Dr. Kidd's diagnosis of Peoples remained accelerated essential

4

hypertension and poorly controlled diabetes mellitus throughout his treatment of her on January 20, 2010, although his notes, after June 30, 2009, stopped referencing her failure to exercise (Tr. 333-351).

On July 24, 2009, Peoples was admitted to Southwest Alabama Medical Center, complaining that she was weak, achy, and unable to walk (Tr. 395-427; *see generally* Tr. 364-427).  Plaintiff's back was noted to be tender though her gait was normal.  A pelvic ultrasound revealed an enlarged uterus, consistent with fibroid disease, and endometrial atrophy (Tr. 411); an abdominal ultrasound demonstrated a large calcified gallstone suggestive of developing cholecystitis (Tr. 413).  On October 13, Peoples had x-rays performed that showed mild osteoarthritic changes in the right shoulder (Tr. 390-94); on December 1, Plaintiff was treated for chills (Tr. 380-89).  On January 12, 2010, x-rays of the right wrist were normal (Tr. 375-79).  On January 27, Plaintiff had a normal chest x-ray (Tr. 365-73).

On April 22, 2010, Neuropsychologist John R. Goff noted that he had been provided with Peoples medical records to review along with his examination of her (Tr. 428-36).  Goff found Plaintiff to have logical and coherent discourse, stating that she was depressed.  Peoples took the WAIS-IV and obtained a full scale IQ score of 81; the Neuropsychologist noted that subtest scores indicated a decline from previous levels of function,

most likely attributable to her poorly-controlled diabetes and hypertension. On the Wechsler Test of Adult Reading, Plaintiff had a predicted IQ score of 91. The Central Nervous System Vital Signs Clinical Report showed above-average scores for attention and concentration, but a very low score for psychomotor speed; reaction time was also noted to be slow. Goff noted that Peoples was "pervasively sad, discouraged and demoralized" (Tr. 432). The examiner noted that Plaintiff "was able to understand, follow and carry out simple and complex instructions at least of a moderate level;" he went on to note that she would have difficulty with tasks requiring more than moderate effort because of a marked tendency to fatigue (Tr. 433). Goff's diagnoses were moderate major depressive disorder, probably continuous, and mild to moderate cognitive disorder associated with a metabolic disorder. The Neuropsychologist completed a Mental Medical Source Opinion form that indicated that Peoples had many moderate limitations in addition to marked limitations in her ability to remember detailed or complex instructions and respond to customary work pressures; he also found extreme limitation in her ability to maintain attention, concentration, or pace for periods of at least two hours and in constriction of interests.

    On February 2, 2010, Dr. David Shaw had Plaintiff undergo an echocardiogram of the left ventricle that was of normal size

and good function with mild mitral and tricuspid regurgitation (Tr. 472-73; *see generally* Tr. 455-75). Nine days later, Plaintiff underwent a GXT Cardiolite test that demonstrated fair exercise capacity; there was no "clear evidence of inducible myocardial ischemia or previous infarctions" (Tr. 474). Peoples also completed a treadmill stress test on February 11, 2010 from which the conclusion was drawn that she had good exercise capacity for her age (Tr. 475). On March 30, Dr. Shaw had the following impression: status post shoulder surgery with manipulation breaking up presumable adhesions; an abnormal EKG; a negative nuclear study; normal LV function; arthritis, and obesity (Tr. 455).

On August 12, 2010, Dr. Huey R. Kidd noted that Plaintiff was not exercising regularly; she had a headache with nausea and vomiting (Tr. 489-93; *see generally* Tr. 477-521). She appeared to be in no acute distress. The doctor's assessment was accelerated essential hypertension, poorly controlled diabetes mellitus, and a migraine headache. A week later, Dr. Kidd noted that Plaintiff's blood sugar was much too elevated; in addition to the usual diagnosis of hypertension and diabetes, Peoples had otitis externa and otitis media (Tr. 486-89). Plaintiff's blood sugar and ears were better on September 2 (Tr. 485-86). At the October 6 and November 8 examinations, Kidd noted that Plaintiff was not exercising regularly; the diagnosis remained the same

7

(Tr. 477-84).  On November 23, the record notes that Peoples had begun to walk regularly; she complained of constant hunger and some weight gain (Tr. 520-21).  She was noted to be obese; Plaintiff's diagnosis included hypertension and poorly controlled diabetes mellitus.  Dr. Kidd recommended a diabetic and low fat diet as well as losing ten pounds.  On February 11, 2011, Peoples complained of being tired all of the time (Tr. 514-16).  On March 30, Plaintiff was seen for strep throat; in addition to her diabetes diagnosis, Kidd noted generalized osteoarthritis (Tr. 512-14).  Peoples was told to cut back on fried foods.  On April 8, esophageal reflux was added to the diagnosis (Tr. 510-12).  On May 24, Plaintiff complained of joint pain for which she was prescribed hydrocodone;[3] the doctor's assessment was hypertension, poorly controlled Diabetes mellitus, and arthritis (Tr. 508-10).  On July 20, Plaintiff was encouraged to get regular exercise; diagnoses remained the same (Tr. 504-07).

On September 6, 2011, Dr. Gary Kania performed a colonoscopy and found two different polyps (Tr. 522-29).  There was no evidence of malignancy, acute inflammation, or inflammatory bowel disease.

At the evidentiary hearing, Peoples testified of her age,

---

[3] **Error! Main Document Only.***Hydrocodone* is used "for the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

8

education, and work experience (Tr. 27-29; *see generally* Tr. 27-40). She had quit working years earlier because high blood pressure and diabetes medications made her tired all of the time (Tr. 29). She could drive locally; mostly, she laid on the couch and watched TV and slept (Tr. 30). She testified that she takes insulin four times a day and checks her blood sugar two or three times a week (Tr. 31-32). Her dominant hand, the right one, goes numb, preventing her from gripping anything tightly or picking up a gallon of milk (Tr. 32-33). Medication does not control her blood pressure (Tr. 33). Peoples has headaches two or three times a week; she gets migraine headaches every two to three months, each lasting twenty minutes or so, which cause nausea and vomiting (Tr. 33-34). Because of tiredness, Plaintiff lies down about four-to-five hours every day; she has tried to do what her doctors told her to do (Tr. 35). Peoples has torn tissues, arthritis and a messed-up rotator cuff in the right shoulder that causes her pain (Tr. 36-37). Plaintiff has trouble with her memory (Tr. 38). She is unable to work because of being tired, because she cannot regularly use her right arm, because she has to go to the bathroom all of the time, and she is constantly taking shots (Tr. 38-39). Peoples is going to have to have surgery on her eyes because of the diabetes (Tr. 39).

Dr. James Anderson testified at the evidentiary hearing as

a medical expert (hereinafter *ME*) (Tr. 40-44).  Anderson stated that Peoples

> has a treating record for diabetes mellitus, insulin dependent.  Poorly controlled, at least partially due to the medical noncompliance, due most likely to a combination of a mental health disorder and her lack of funding.  She has hypertension without any end-organ damage.  She has visual problems due to a combination of diabetic retinopathy, stigmatism, and refractory error which are corrected to 20/20 with glasses.  She has chronic abdominal pain with a history of gallbladder and a total abdominal hysterectomy for benign disease, both in the year 2009.  And, she has a diagnosis of shoulder pain with the diagnosis of rotator cuff strain treated symptomatically.  No hospitalizations or significant treatment for diabetic complications.

(Tr. 41).  It was Anderson's opinion that Peoples did not meet any of the Listing requirements and that she would be limited to light work (Tr. 42).  He acknowledged that fatigue could be a symptom of poorly controlled diabetes and hypertension and that hypertension can cause headaches (Tr. 44).

A Vocational Expert (hereinafter *VE*) testified that Plaintiff, based on hypothetical questions posed by the ALJ, was not capable of performing her past relevant work but could perform the following jobs:  factory hand worker, nut sorter, and production inspector (Tr. 44-50).

After summarizing the medical and vocational evidence of

record, the ALJ determined that Peoples was capable of performing a reduced range of unskilled, light work (Tr. 9-22). Specifically, he reached the following conclusions:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except that she can lift/carry items of 20 pounds weight occasionally and 10 pounds frequently. She can sit for 6 hours and stand/walk for 6 hours. She can perform occasional pushing/pulling with the right (dominant) upper extremity and unlimited pushing/pulling with the lower extremities. She can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally climb ladders, ropes, or scaffolds. She can perform unlimited reaching with the left arm. She should avoid overhead reaching with the right arm, but she can frequently reach otherwise with the right arm. She can perform frequent handling with the right hand and unlimited handling with the left hand. She can perform unlimited fingering. She can tolerate occasional exposure to extreme cold. She should avoid all exposure to unprotected heights. She cannot work around bodies of water or drive commercially. She can perform simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few work place changes. She can tolerate non-transactional and occasional interaction with the public, and occasional interaction with supervisors. She is able to sustain concentration and attention for 2-hour periods with customary breaks. She must be reminded of tasks 1 time per day. She can be expected to have 1 unplanned absence per month.

(Tr. 14). The ALJ determined that information provided by

11

Peoples was not entirely reliable (Tr. 18-19). He discredited the opinions of Dr. Goff while giving substantial weight to the testimony of the ME, Dr. Anderson (Tr. 19-20). Based on the VE's testimony, the ALJ found that there were specific jobs that Peoples could perform.

In bringing this action, Peoples claims that the ALJ erred in rejecting the opinion of the only examining neuropsychologist (Doc. 14, pp. 6-8). Plaintiff cites several reasons for this claim, all of which will be discussed. It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[4] *see also* 20 C.F.R. § 404.1527 (2012).

In bringing this claim, Peoples points out that the ALJ adopted Goff's diagnosis of cognitive loss as a severe impairment even though no other medical source offers the same diagnosis. Plaintiff goes on to argue, apparently, that because the diagnosis was adopted, the ALJ had accepted Goff as a specialist and could not then reject his opinions (Doc. 14, p.

---

[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

12

6). The Court finds no merit in this argument, noting that the ALJ can reject any opinion not supported by the evidence.

Peoples also takes umbrage in the ALJ's rejection of the Goff's opinion as having been bought by her attorney (Doc. 14, p. 6). The Court notes that the ALJ stated as follows:

> It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.

(Tr. 19-20). The Court agrees that the ALJ's remarks are offensive as they impugn the integrity of the medical opinion and the doctor giving it. However, the Court will not reject the ALJ's conclusion on this basis as he gave one other reason for rejecting Goff's opinion.

The ALJ's other proffered reason for rejecting the Neuropsychologist's opinion is "because it is not consistent with the objective evidence of record and the residual functional capacity of the claimant" (Tr. 20). The Court notes, however, that the ALJ did not state what the evidence was that

13

he was using as the basis for rejecting Goff's conclusions.[5] The Court notes that there is no other evidence of record regarding People's mental impairments and that the only evidence given any weight by the ALJ came from ME Anderson who testified that she had a mental health disorder; the ME also acknowledged that a person experiencing both high blood pressure and diabetes could suffer cognitive loss (Tr. 41, 43).

In this record, Neuropsychologist Goff is the only expert n who provided an evaluation of Peoples' mental abilities and limitations; that was done after an examination and administering a battery of tests. The ALJ points to no evidence to dispute Goff's conclusions, choosing only to find that that the opinion was paid for and unsupported by unspecified, objective evidence (Tr. 20). Without more, the Court cannot say that the ALJ's conclusion is supported by substantial evidence.

The Court does not find that Plaintiff is disabled or is even likely disabled. The Court's holding is limited to the finding that the ALJ's conclusion, that Dr. Goff's opinion should be rejected, is not supported by substantial evidence.

---

[5]The Court finds it of no moment that the Government is more than willing to offer evidence it considers contrary to Dr. Goff's opinion (*see* Doc. 15, pp. 8-10), noting that Plaintiff is equally willing to point out why he got it right (*see* Doc. 14, p. 7). The Court's duty is not to determine whether persuasive arguments have been made as to what the ALJ might have meant, but to determine whether the ALJ's conclusions are supported by substantial evidence.

Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a consultative psychological evaluation as to Plaintiff's mental abilities and limitations.  Judgment will be entered by separate Order.

DONE this 25th day of January, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
